## Case No. 15,923.

### UNITED STATES v. ONE CASE OF CASHMERE SHAWLS.

[5 N. Y. Leg. Obs. 247.]

District Court, S. D. New York. April 12, 1847.

CUSTOMS DUTIES — FRAUDULENT INVOICES — RULE AS TO VALUATION—INDICTMENT—EVIDENCE.

[1. The act of August 30, 1842 (5 Stat. 548), so far changes and modifies the provisions of section 66 of the act of March 2, 1799 (1 Stat. 677), section 4 of the act of May 28, 1830 (4 Stat. 410). and section 14 of the act of July 14, 1832 (4 Stat. 593), in respect to the nature and contents of invoices, that the price or value of the goods must be stated according to the actual. market value or wholesale price at the time of purchase in the principal markets of the country from which the imports are made; otherwise, these sections remain in full force and operation.]

[2. Therefore, to support an information for a fraudulent purchase. under the 14th section of the act of July 14, 1832. it is not enough that the jury have found that an invoice of merchandise imported from Lyons, France, does not contain the true market value thereof at Lyons, and that the undervaluation was fraudulent and with intent to evade payment of the duties; there being no evidence or finding as to whether Lyons was one of the principal markets of France, or as to the value of the goods in such markets ]

[3. A false and fraudulent valuation in an invoice not demanded by the statutes. and which can he of no avail at the custom-house, is not, of itself. sufficient to justify condemnation of the goods.]

This was a libel of information by the United States, upon a seizure by the officers of the customs, for an alleged fraudulent importation from France. The information contained six counts, the first averring that the package and invoice were made up with intent, by false valuation, extension, and otherwise, to evade and defraud the revenue, in this, that the goods, having been procured otherwise than by purchase, were charged in the invoice at a less price than the actual value thereof at the time and place where and when procured, contrary to the 4th section of the duties act of May 28, 1830; the second, that the invoice was made up with like fraudulent intent, in this, that the goods. were not invoiced at the actual cost thereof at the place of exportation, contrary to the same act and section; the third, that the goods were invoiced at a less price than the actual cost thereof at the place of exportation, with design to evade the duties contrary to the 66th section of the act of March 2, 1799; the fourth, that the package was made up with like fraudulent intent, in this, that the goods, having been procured otherwise than by purchase, were falsely valued in the invoice, and charged therein, at a less price than the market value of the goods, at the place when and where procured, against the 4th section of the act of May 2, 1830; the fifth, that the package was made up with intent to evade and defraud the revenue, in this, that the goods were falsely valued in the invoice, and charged therein at a less price than the actual cost of the goods, at the place when and where procured, contrary to the same act and section; and the sixth, that, the goods being composed wholly or in part of wool or cotton, the package was made up with intent to evade and defraud the revenue, contrary to the 14th section of the act of July 14, 1832, without specifying the manner in which it was made up, or the particulars showing the intent. Charles Pages and Blein, of Lyons, having put in a claim, the cause was tried on the 28th and 29th of September, 1846. The questions of law were reserved, and the case was submitted to the jury, upon the questions of fact, whether the invoice contained the true market value at Lyons, and if not, whether the undervaluation was made with intent to evade the payment of duties. The jury found a verdict for the United States.

A motion in arrest of judgment was then made, and was argued on the 10th of October, 1846, and the 23d and 24th of February, 1847, by

D. D. Field, for claimants, who relied upon the following points.

1. The libel of information contains six counts; the 1st, 2d, 4th and 5th, on the 4th section of the act of May 28, 1830; the 3d on the 66th section of the act of March 2, 1799; and the 6th on the 14th section of the act of July 14, 1832. These sections are

all repealed by the act of August 30, 1842, §§ 16–19, 21, 23, 26. The act of 1799 forfeits the goods not invoiced "according to the actual cost thereof at the place of exportation, with design to evade the duties." The act of 1830 forfeits the package or invoice, if "made up, with intent by a false valuation, extension or otherwise, to evade or defraud the revenue." The act of 1832 forfeits the package, if made up "with intent to evade or defraud the revenue." In the act of 1842, the 26th section declares, "that all provisions of any former law, inconsistent with this act, shall be, and the same are hereby, repealed." The foregoing provisions of the acts of 1799, 1830, and 1832, are inconsistent with this act, in the following respects: (1) This act imposes new and different penalties for false or fraudulent invoices; by the 17th section a penalty of 50 per cent. added, to the duty, and by the 19th section, fine and imprisonment. If these penalties are held to be cumulative to the former, then it follows, that for a false or fraudulent invoice, the goods may be made to pay a penalty of 50 per cent., and be forfeited besides, and the party also fined and imprisoned; a consequence impossible to uphold. (2) It also declares, that the appraisement shall "be final, and deemed and taken to be the true value of said goods, and the duties shall be levied thereon accordingly, any act of congress to the contrary notwithstanding." This imports that the goods are not to be forfeited, but to be admitted to entry and passed. The rest of the section declares what is to be done, if they are undervalued. (3) The act of 1842 covers the same ground as the other acts. It is in fact a revision of them. It is another declaration of the will of congress upon the same subject. The old will and the new cannot both stand. On comparing the act with the previous ones, it will be seen, that sections 16 and 17 are a revision of sections 7 and 8 of the act of 1832, with the addition of much that is new. The 16th section directs an appraisement in all cases of ad valorem duties. The 17th authorizes the appraisers to inform themselves by an examination of the importer and the production of papers. If the importer is dissatisfied he may, as he did in this case, appeal, and then two merchants are to decide. The appraisement thus made is final, and to be deemed the true value, and the duties levied accordingly. Whenever the value thus ascertained exceeds by 10 per cent. the invoice value, then in addition to the duty, there shall be levied 50 per cent. of the duty imposed on the same when fairly invoiced. Section 18 assigns the collectors to take the duty in the article itself—a new provision. Section 19 declares, that any person making out a false or fraudulent invoice shall be deemed guilty of a misdemeanor, and liable to fine and imprisonment—also a new provision. Section 21 is a revision of such parts of the 4th section of the act of 1830, and the

14th section of the act of 1832, as are not within the purview of the previous sections of this act. It provides for the case of a package containing an article not specified in the invoice, and applies to all goods, whether subject to ad valorem duty or not. Section 23 is like the 9th section of the act of 1832, except by the insertion of the words "or wholesale price thereof." Section 26 is like the 12th section of the act of 1832, except that it is more full and explicit. But the provisions in the act of 1842 that "the appraisement thus determined shall be final, and deemed and taken to be the true value of said goods, and the duties shall be levied thereon accordingly, any act of congress to the contrary notwithstanding;" that in case of undervaluation a penalty of 50 per cent. be imposed; and that the making out of a false or fraudulent invoice shall be punished by fine and imprisonment—are in neither of the three other acts. Moreover under the act of 1842, ad valorem duties are in all cases to be calculated on the market value or wholesale price, in the principal markets of the country whence imported. Whereas by the 66th section of the act of 1799, they were to be calculated on the actual cost; and by the 4th section of the act of 1830, on the actual cost or value, in the place where purchased or procured.

2. Even if the sections, upon which the information is filed, were all in force, it would still be insufficient to sustain a judgment of forfeiture. All the counts are defective, in not averring that the entry was made according to the invoice. The offence enacted by the sections consisted, in making an entry upon an invoice below the value, with design to defraud. For aught that is charged, the entry may have been according to the true value, even if the invoice was fraudulent. The law punishes, not the intention, but the attempt, to defraud the revenue.

B. F. Butler, U. S. Dist. Atty., contra.

The 66th section of the act of March 2, 1799; the 4th section of the act of May 28, 1830; and the 14th section of the act of 14th July, 1832 (the provisions counted on the information), are, each of them, in force, neither of them being inconsistent with the act of 30th August, 1842. The title of the act of 1842 shows that it was not intended to repeal the former laws, except so far as they were expressly changed. It retains the pre-existing system, but with certain changes and modifications. The 26th section accordingly expressly retains in force the laws existing on the 1st day of June, 1842, for the collection of the duties imposed by this act on goods imported into the United States; thus recognizing the continuance of the laws of 1830 and 1832, excepting so far as those laws were in conflict with the law of 1842. The sections of the act of 1842, to which the former laws are said to be inconsistent, are the 16th, 17th, 18th, 19th, 21st, 23d, and 26th, but

these sections contain nothing to abrogate those parts of the acts of 1793 [1 Stat. 836], 1830, and 1832, on which the information counts. The 16th is substantially the same as the 7th section of the act of 1832, except that it requires the appraisement to be made according to the "market value or wholesale price, in the principal markets of the country from which the same shall have been imported," instead of the "actual value at the place of exportation," as prescribed by the act of 1832, or the actual cost at such place, as prescribed by the act of 1799, § 66. This alteration does not affect the present question.

The first part of section 17 is substantially the same as section 8 of the act of 1832. The latter part is a substitute for the 3d section of the act of 1830, from which it differs by providing: 1st. A different mode of making the re-appraisement. This alteration does not affect the present question. 2d. That the re-appraisement shall be conclusive. But this is only declaring in express terms, what had been determined to be the effect of the former laws of 1830 and 1832. See Rankin v. Hoyt, 4 How. [45 U. S.] 327. This clause has reference merely to the payment of duties, and does not affect the question of forfeiture. 3d. By directing, that if the goods be appraised 10 per cent. above the invoice value, there shall be collected, in addition, 50 per cent. on the duty when fairly invoiced. This additional 50 per cent. is entirely irrespective of fraudulent intent on the part of the importer. It was not intended, by its framers, that it should be substituted in lieu of forfeiture in case of fraudulent undervaluation. On the contrary, they intended to make the law more stringent and severe.

It is perfectly consistent with the continued existence and application of the forfeitures, prescribed by the former laws, and is conclusively shown by the fact, that the tariff act of 1823 [3 Stat. 729], along with various provisions forfeiting goods in case of undervaluation, contained a provision like the one in question (section 13 of the act of 1823). The tariff act of 1828 [4 Stat. 274] contained the like provision (section 9). Whether it was politic or liberal to return to this system, was a question for the congress of 1842, which with the judiciary cannot interfere. Section 18 empowers the collector to take the duties in the article itself—a new provision, but one that has no bearing on the point in question. Section 19 declares (1) that any person who shall knowingly, &c., smuggle or clandestinely introduce into the United States, goods subject to duty, and which should be invoiced, without paying or accounting for the duty, or (2) make out, pass, or attempt to pass through the custom-house, any false, forged, or fraudulent invoice: shall be deemed guilty of a misdemeanor, and punished by fine or imprisonment, or both. The first of these provisions is not contained, in hæc verba, in either of the foregoing laws; but it is not entirely new, for the 50th section of the act of 1799 forfeits goods unladen without permit, and subjects all persons concerned therein to indictment, and on conviction, to a penalty of $400, and to disability to hold office for seven years. The second clause making the use of false, forged or fraudulent invoices, an indictable offence, is new; but it is evidently cumulative, and in addition to other penalties. That congress had the power to make this addition to the other penalties, cannot be doubted. That they intended to do so may be inferred from the character of the law of 1842, the guarded language of the repealing statute (section 26), and from the omission in section 19 to say that it should be in lieu of the forfeiture of the goods provided for by prior laws.

There are many such cases in the acts of congress, in which, in addition to the forfeiture of the goods, fines and penalties are imposed on the person; and whether it should be done in this case or not, was a matter for the decision of the legislature. It would be against the evident scope of the whole act of 1842, to suppose, that in the case of a fraudulent invoice, the only redress left to the government, beyond the increase of 50 per cent. on the duty, was the very uncertain remedy of indictment under the 19th section.

Section 21 differs from section 4 of the act of 1830, and section 14 of the act of 1832, in the following particulars: 1st. One package out of every 10, instead of 20, to be designated by the collector. This alteration does not affect the present question. 2d. It introduces new provisions in regard to articles not specified in the invoice. This alteration affects, very materially, cases of that sort, but does not bear on the present question.

Section 23 is a re-enactment of section 9 of the act of 1832, authorizing the secretary of the treasury to establish rules and regulations. The words "market value" and "wholesale price" introduced. This section has no bearing on the present question. Section 26, as already remarked, shows most conclusively, that the pre-existing laws, as to fines, penalties and forfeitures, were intended, as a general system, to be retained in force, and it forms, therefore, a decisive objection to the argument of the other side. Repeals of the former laws, thus retained, or of any portion of them, by implication, are not to be favored; and the repugnance must be positive and insuperable, before the court will pronounce in favor of the alleged repeal. That there is no such repugnance here, has been shown by the foregoing analysis of the statutes, and will be illustrated by reference to the decisions of the courts of the United States in the cases of U. S. v. Blackburn, in the Pennsylvania district, before Judge Hopkins [Case No. 14,603], and U. S. v. Wood, in the supreme court. 16 Pet. [41 U. S.] 262, in which it was held that forfeitures given by the 66th section of the act of 1799, and the 4th section of the act of 1830, are left in force by the act of 1832.

Each count in the information is good and sufficient, although it is not averred that the entry was made according to the invoice. Neither of the statutory provisions counted on, makes the offence to consist, or the forfeiture to depend, on the fact of entering the goods below their value; on the contrary, the offences denounced in the statutes, counted on, are "the not invoicing the goods according to the actual cost thereof, with design to evade the duties" (66th section of act of 1799), "the making up of the package or invoice, with intent, by a false valuation, &c., to evade or defraud the revenue" (4th section of act of 1830), and "the making up of the package with intent to evade or defraud the revenue" (14th section of the act of 1832). The different counts follow the language of the statutes on which they are founded; and the terms employed in the description of the offence have the same meaning and force in the pleading which they have in the statutes. No greater particularity is required. The suggestions of the claimant's counsel, that "the entry may have been according to the true value, even if the invoice was fraudulent, and that in such case, the goods would not be forfeitable, is erroneous both in its premises and conclusion. The jury have found by their verdict that the invoice was fraudulent, and the averment being, that on the entry being made, the fraudulent invoice was produced and left with the collector, the fair inference is, that the entry conformed to the invoice; and even if it were necessary, in order to obtain a forfeiture, that the information should aver that the entry was made according to the invoice, still, after verdict, it is too late to take the objection. The forfeiture will take place notwithstanding the entry be made according to the true value, provided the invoice which is produced and left with the collector, at the time of such entry, be false, and fraudulently made up. The production of the false and fraudulent invoice at the time of the entry, is not a mere intention to defraud, but an actual attempt to defraud, whatever may be the character of the entry.

On the 23d of March, THE COURT made the following decree:

This cause having been heard on a motion in behalf of the claimants to arrest judgment on the verdict rendered in the cause, and argued by the counsel for the respective parties, and due deliberation being had in the premises, it is considered by the court, that the provisions of the act of congress, entitled "An act to provide revenue from imports, and to change and modify existing laws imposing duties on imports, and for other purposes," approved August 30, 1842, so far change and modify the provisions of the then existing laws in respect to the nature and contents of invoices required by them to be produced, on the importation of goods, wares, and merchandise, into the United States, as that the prices or value of such goods, wares and merchandise, must be stated therein according to the actual market value, or wholesale price thereof, at the time when purchased, in the principal markets of the country from which the same shall have been imported into the United States. Wherefore, it is considered by the court that the first, second, third, fourth and fifth counts of the information filed in this case are insufficient in law to support the verdict rendered in behalf of the United States in this cause. It is further considered by the court, that the sections of the various acts of congress, counted upon by the plaintiffs in the said information are in other respects in full force and operation, not being repealed by or repugnant to the provisions of the said act of August 30, 1842. It is therefore considered by the court, that the sixth count in the said information is sufficient in substance to support the verdict rendered upon the pleadings in this case in favor of the plaintiffs. Wherefore, it is ordered and adjudged by the court, that the motion in behalf of the claimants in this cause to arrest judgment on the verdict aforesaid, be overruled and denied.

Thereupon, a motion was made for a new trial in respect to the issue upon the sixth count on the following point:

As to the sixth count, the only one now to be regarded, the claimants are clearly entitled to a new trial. The case was put to the jury upon two questions, which in this respect were immaterial. Whether or not the invoice contained the true market value at Lyons, has nothing to do with the issue whether the package was fraudulently made up, and much less decided such issue—and so of the other question put to the jury, whether, if the invoice did not contain the true market value at Lyons, the undervaluation was made with intent to evade the payment of duties.

BETTS, District Judge. The motion for a new trial rests on the want of evidence on the part of the United States to support the sixth count, the only one admitted by the court to be legally sufficient; and because the matter of fact submitted by the court to be found by the jury, was immaterial to the issue upon that count. The sixth count charges the forfeiture of the goods to have accrued on its being found on examination and inspection at the custom-house, that the package was made up with intent to evade and defraud the revenue. The count is framed upon the provisions of the 14th section of the act of July 14, 1832, and embraces all the allegations necessary to bring the case within that section. [Clifton v. U. S.] 4 How. [45 U. S.] 242. It seems conceded that all the evidence offered on the trial which could be applied to this

count, consisted in the invoice representing the value of the goods at Lyons, and testimony conducing to show that the goods were not stated at their true market value in Lyons at the time the invoice was made up. There can be no question but that an invoice falsely varying from what the statute requires, would be evidence proper to be submitted to the jury in support of the averments of the sixth count. It is not necessary in this case to assert the principle, but I see no ground to doubt its correctness, that the jury might be justified on evidence clearly establishing the fraud of such invoice, in finding that the package it purported to represent and describe, was prepared and made up to evade and defraud the revenue, and consequently subject to forfeiture under the act of 1832. But the invoice could not produce such consequences, unless it was made up in plain violation of the statute; a false valuation or description of the goods in a paper not demanded by the statute, and of no avail at the customhouse, could not, of itself, subject the goods to condemnation under any existing provisions of the revenue laws. The invoice the importer is required to present, since the act of August 30, 1842, is one representing the true market value of the goods at the time of purchase in the principal markets of the country from which they were imported, and if it was not indispensable to aver in the information, that Lyons was such market of France, it was necessary to prove it before the invoice made up with reference to that place, could be made evidence to the jury on this issue. But even if this piece of testimony was allowably admitted, it is clear that the facts agreed between the counsel to be submitted to the jury, had no legal relation to the averments of the sixth count. There must be evidence in the case to show that an invoice being false, it necessarily violates the law in relation to it, to render it available in support of the information. The case states, "It was agreed that all the questions of law in this case should be reserved, and that the cause should be submitted to the jury upon questions of fact, whether the invoice contained the true market value at Lyons and if not, whether the undervaluation was made with intent to evade the payment of duties." The jury found a verdict for the United States, thus negativing the first, and affirming the second, inquiry. There being no other representation of value than the invoice, the verdict of the jury cannot be taken on the case as presented, to have found the fact of a general false representation with intent to evade the payment of duties, if that could be regarded a fact involving the forfeiture of the goods under this count. The verdict asserts that the invoice does not contain the true market value of the goods at Lyons, and that the undervaluation was fraudulent, with intent to evade the payment of duties.

It is not a presumption of law to be raised by the court, that the true prices and value of goods at Lyons, are those of the general markets of France, and thus by inference pronounce the claimants guilty of a violation of the law. Nor would the jury be authorized to adopt that as a presumption or inference of fact. There was accordingly no testimony before the jury pertinent to the special facts required to be found, which can justify the verdict rendered. Therefore, both because of the want of proofs to sustain the issue on the part of the United States, and because the facts the jury were required to find were not, of themselves, a cause of forfeiture under the act of 1832, nor without the aid of other facts or circumstances, evidence from which the fraudulent act charged in the sixth count, could be legitimately inferred, the verdict must be set aside.

It is accordingly ordered that the verdict of the jury given in this case be set aside, and that a new trial be had therein.